IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:19-CR-146-B |
| v. | |
| LEAH HAGEN (01)<br>MICHAEL HAGEN (02) | |

**UNITED STATES' RESPONSE TO DEFENDANTS' TRIAL BRIEF**

# Table of Contents

FACTUAL BACKGROUND….…………………………………………....………..1

LEGAL STANDARD……………………………………………………………..4

ARGUMENT…………………………………………...………………………4

    A. Any anticipated testimony from Mr. Skora and additional defense exhibits are inadmissible hearsay…………………………………………………5

    B. Communications between Kimble and his attorneys are inadmissible under Rule 403 because they are irrelevant, will only confuse and mislead the jury, and are cumulative…............……………………………………………..6

    C. The defendants already had ample opportunity to attack Mr. Kimble's credibility and there is nothing to impeach……………….………………8

    D. If either defendant chooses to testify, they put in issue communications they had with their own counsel on these topics……………………………………………...…………………….10

    E. Any anticipated testimony regarding the lobbying efforts related to draft congressional legislation is also irrelevant……..…………….…………12

CONCLUSION………………………………………………………………..13

The United States of America respectfully files this response to the defendants', Leah Hagen and Michael Hagen, trial brief regarding the admissibility of communications between Herb Kimble and his attorneys and the testimony of Joshua Skora. (Dkt. 266.) For reasons stated below, the relief the defendants request must be denied. The evidence is inadmissible because it is irrelevant, hearsay, unduly prejudicial, cumulative, and presents a high risk of confusing and misleading the jury.

## FACTUAL BACKGROUND

For over a year, the Court has received briefing and heard argument about this precise issue. Before trial, the Court ordered defendants to disclose *in camera* certain related communications in an effort to streamline the trial. (*See, e.g.*, Dkt. 233.) And during trial, defendants ably cross-examined Herb Kimble across two days. Specifically, defense counsel extensively cross-examined Mr. Kimble on the fact that he had template contracts vetted by attorneys and his use of those contracts. The defense walked Mr. Kimble paragraph-by-paragraph through the details of those template contracts. Critically, however, Mr. Kimble testified that he *never* relayed the fact that the contracts had been reviewed by attorneys to the Hagens. On July 1, 2021, before the jury, Kimble testified as follows:

> Q. You also told the Hagens that your businesses and operations were compliant with all healthcare rules and regulations, didn't you?
> A. I don't recall that.
> Q. You didn't tell them that?
> A. I do not recall that.
> Q. You do not recall or didn't?
> THE COURT: No, no, he said he doesn't recall doing that.
> […]

**United States' Response to Defendants' Trial Brief—Page 1**

> Q. (By Mr. Lewis) And my question is, are these templates [DX 260, 261, and 262], even though these are not the contracts, I will -- I will represent these are not the contracts that were exchanged with the Hagens. These are the same templates for those contracts; is that correct?
> […]
> A. Yes, sir.
> […]
> Q. Okay. And just to be clear that Chronos, with K&L Gates in these contracts, Chronos Strategies and Pantheon engaged this law firm for legal services; is that correct?
> A. Yes, sir.
> […]
> MR. LEWIS: I'm going to move –
> THE COURT: Are you going to ask a question?
> MR. LEWIS: Oh, I'm sorry. I apologize.
> THE COURT: Please ask the question.
> **Q. (By Mr. Lewis) Mr. Kimble, did you share your communications with the King & Spalding and K&L Gates with the Hagens?**
> **A. No.**

(Trial Tr. Vol. 4, at 89:9-17, 154:24–157:2 (emphasis added).)[1]

---

[1] Further, outside the presence of the jury, Kimble testified as follows:
> Q. (By Mr. Lewis) The contracts that you – that you exchanged with the Hagens, do you recall those?
> A. Yes, sir.
> […]
> Q. (By Mr. Lewis) King & Spalding prepared the template contracts […] that you are now claiming to be shams; is that correct?
> A. Yes.
> Q. And K&L Gates reviewed a second set of those documents and also gave you both compliance and regulatory advice, correct?
> A. They gave me advice.
> **THE COURT: Did you pass that along to the Hagens?**
> **THE WITNESS: No.**
> **THE COURT: Okay. I mean, I think the fact that he didn't pass it along to the Hagens, disregarding every other thing I have said, is enough to preclude that line of discussion. All right?**
> […]
> (By Mr. Lewis) So you -- you -- you told the Hagens that these contracts were a sham, correct?
> A. We didn't actually use that word. We just said that they were there in the event Medicare comes in.
> THE COURT: You what?
> THE WITNESS: You'll need to show Medicare these agreements in the event they come in and ask for anything compliant.

**United States' Response to Defendants' Trial Brief—Page 2**

Now, defendants ask the Court to revisit its evidentiary rulings now that Mr. Kimble is no longer on the stand and the government already concluded the direct examination of its final witness. In their trial brief and on the record, defendants argue that (1) they should be permitted to recall Mr. Kimble to testify further regarding his communications with legal counsel and (2) they may elicit testimony from K&L Gates attorney Joshua Skora regarding his communications relating to the creation and use of his contracts. (*E.g.*, Dkt. 266 at 2; **Exhibit A**, Email Correspondence, July 4, 2021 (identifying Joshua Skora as an anticipated defense witness).) The purpose of introducing this evidence is ambiguous at best.

Indeed, on Friday, July 2, 2021, outside the presence of the jury, the Court expressed concern that the defense had not been forthcoming with the Court as to how it would use this evidence. (*See, e.g.*, Trial Tr. Vol. 5, at 178-185 (July 2, 2021).) The Court is correct. In pretrial litigation, defense counsel represented that they intended to introduce this evidence as part of a good faith defense because it goes to Leah Hagen's and Michael Hagen's intent.[2] Now, however, that is foreclosed because Mr. Kimble

---

(Jury Trial Tr. Vol. 4, at 131:3–133:8 (July 1, 2021) (emphasis added)).

[2] *See, e.g.*, Hearing Tr. at 54:25–55:21 (June 2, 2021):
> THE COURT: Do you expect that Kimble's lawyers will testify as to legal advice they gave Kimble regarding legality of his business or lack thereof?
> MS. STEFANOVA: That is -- they may, if that comes up. But that is not -- there is nothing -- even if they do, I guess even in a situation that he testifies to any advice, that is still not advice that was relayed to the Hagens or that the Hagens could benefit from in any way.
> THE COURT: What purpose do you intend to use the testimony of Kimble's lawyers for?
> MS. STEFANOVA: To discuss the way he ran his operations. **And that is relevant to good faith, as opposed to the advice-of-counsel defense, because it goes to the Hagens, purely their understanding of who they were dealing with.** So this is very distinguishable from a situation in which, for example, the Hagens would try to argue that

**United States' Response to Defendants' Trial Brief—Page 3**

testified that he never shared the fact that the contracts were drafted by his attorneys with the Hagens.  Defendants now argue that they seek to introduce this evidence to: (1) impeach Mr. Kimble, and (2) question Mr. Kimble about "about the origin, purpose, and use of the contracts and other legal advice he requested and received as to his business operations."  (Dkt. 266 at 2.)  Simply put, they are attempting to change Kimble's prior testimony and retread ground covered during Mr. Kimble's cross.  Regardless of the purpose, the evidence is inadmissible.

## LEGAL STANDARD

A trial judge's evidentiary rulings are reviewed "for abuse of discretion, subject to harmless error review."  *United States v. Martinez*, 921 F.3d 452, 481 (5th Cir. 2019) (quoting *United States v. Alaniz*, 726 F.3d 586, 606 (5th Cir. 2013) (quoting *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011))).  The trial court has broad discretion in determining the relevance or prejudicial effect of evidence.  *Id*.

## ARGUMENT

The key issue in this case is the defendants' intent.  As defendants elicited from Mr. Kimble, he never shared his legal consultations with the Hagens so it could have no impact on their intent.  Re-calling Mr. Kimble, or permitting the defendants to call any of his attorneys as witnesses, would create undue prejudice, elicit irrelevant testimony and

---

their attorney told them that they were allowed to do something. **This goes to their intent and their understanding of who they were dealing with.** […]
(emphasis added); *see also* Hearing Tr. at 65:14-18 (June 9, 2021) (MS. STEFANOVA: It is not even about -- we're not certain whether it's going to be the legitimacy of the operations, **but it's about what he told the Hagens** […]." (emphasis added)).

**United States' Response to Defendants' Trial Brief—Page 4**

hearsay, and confuse and mislead the jury with evidence that can only be offered for the truth. Accordingly, the relief requested in defendants' trial brief must be denied.

### A. Any anticipated testimony from Mr. Skora and additional defense exhibits are inadmissible hearsay.

The Court already found that the emails between Kimble and his attorneys are inadmissible hearsay. (Trial Tr. Vol. 4, at 137:21–138:7 (July 2, 2021).) But the defendants now argue that the communications are not hearsay because they are being offered for the effect on the listener, "Mr. Kimble[,] and him knowing that he was *able* to portray he was compliant." (*Id*. at 186:20-24 (emphasis added).) First, the defendants have already elicited the effect that the legal advice had on Mr. Kimble—it allowed him to appear compliant and disguise the true nature of his business. Mr. Kimble testified *multiple times* that he had the contracts vetted to make his operation appear compliant, but that he never relayed that fact to the defendants. Second, the defendants are offering this squarely for the truth of the matter asserted—that Mr. Kimble's attorneys gave him advice and wrote compliant contracts.

Further, emails of this nature—containing substantive, unique communications between Mr. Kimble and his attorneys—cannot be business records under Rule 803(6). *See, e.g.*, *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*, No. MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012) (discussing the exclusion of records that do not record regularly occurring activities, including informal conversations captured in email chains that are "essentially substitutes for telephone calls" with "individual content [that] does not demonstrate the requisite regularity");

*Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850–51 (N.D. Tex. 2009) ("Although the record of the e-mails would be covered by the Rule 803(6) exception, the e-mails themselves would still have to be covered by some other hearsay exception."); *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) ("An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule.").

### B. Communications between Kimble and his attorneys are inadmissible under Rule 403 because they are irrelevant, will only confuse and mislead the jury, and are cumulative.

First, evidence of Mr. Kimble's legal advice, whether elicited by recalling Mr. Kimble to cumulatively question him about advice he received, or through Mr. Skora's testimony, is irrelevant and should be excluded. As admitted by the defendants to the Court on numerous occasions, and as established by Kimble's testimony during cross-examination on July 2, 2021, there is *no evidence* that any legal advice that attorneys provided to Kimble was ever relayed to the defendants. Because this legal advice, or even that fact that legal advice was given, was never passed along to the defendants in any form, it is irrelevant to the defendants' intent and therefore is not probative of the elements at issue in this case.[3]

The defense exhibits referenced in the trial brief and Mr. Skora's anticipated testimony would be cumulative of the evidence already thoroughly explored through Mr.

---

[3] To the extent defendants plan to delve into legal advice provided by Mr. Skora or K&L Gates outside of the template contracts and business model of Chronos and Pantheon, that evidence is inadmissible as it was about aspects of Mr. Kimble's activities unrelated to the defendants, including other businesses run by Mr. Kimble. Allowing defendants to ask about this separate legal advice would confuse the jury, waste time, be irrelevant, elicit hearsay, and be unduly prejudicial. Fed. R. Evid. 403.

**United States' Response to Defendants' Trial Brief—Page 6**

Kimble's cross-examination. The defendants have already elicited from Mr. Kimble on cross-examination that Mr. Skora's firm vetted the template contracts. The defendants showed Mr. Kimble an email from Mr. Skora attaching the contracts and questioned him about the substance of that email and its attachments. Mr. Kimble was clear that he never relayed the fact that the contracts were vetted to the Hagens. (*See, e.g.*, Trial Tr. Vol. 4, at 154:24–157:2.) He testified to this issue at least three separate times. Mr. Kimble further testified about what he and the Hagens did with those contracts afterward—that "[t]hey were there to defraud the Government and Medicare in the event that someone walked in and wanted to see how you were getting your patients." (Trial Tr. Vol. 4, at 104:12-14 (July 1, 2021).) The Court summarized this well on Friday, July 2, 2021: "But it's not that the documents or any of the documents he got from his lawyers were disguises. They were pristine. They were in good shape. They were perfect. It's just that in the context here they used it as a disguise for what they were really doing." (*Id*. at 187:12-18.) Mr. Kimble should not be recalled, and Mr. Skora need not be called, to rehash the same line of questioning.

Further, whatever Mr. Kimble told his lawyers, and whatever those lawyers told him, does not establish who the defendants thought Kimble was because the defendants were never privy to those conversations. The evidence is therefore inadmissible under Rule 403 because it will serve only to confuse and mislead the jury—this is precisely why the Court, on multiple occasions, ordered that defense must ask not one, but two questions: first, whether Mr. Kimble had the contracts vetted by attorneys, and second, whether he relayed that fact to the Hagens. Once Mr. Kimble answered the second

**United States' Response to Defendants' Trial Brief—Page 7**

question in the negative, any additional exploration of his answer to the first question is no longer relevant and would only serve to confuse the jury.

Mr. Skora's anticipated testimony and the documents surrounding the advice he provided to Mr. Kimble are irrelevant for another reason. The template contracts shown to Mr. Kimble during cross-examination that were "vetted" by Mr. Skora and his firm are dated October 2017—over 1.5 years *after* defendant Leah Hagen signed contracts with Kimble's companies, Chronos and Pantheon. (DX 259-262.) Any testimony elicited from Mr. Skora about his review of those contracts and any accompanying documentation would post-date the defendants' decision to sign contracts with Mr. Kimble. The templates are entirely irrelevant.

### C. The defendants already had ample opportunity to attack Mr. Kimble's credibility and there is nothing to impeach.

Defendants now alternatively argue this evidence goes to impeachment and to attack Mr. Kimble's credibility. (Dkt. 266 at 5-6.) However, the defendants already had ample opportunity to question Mr. Kimble about these documents and attack his credibility by using them. During their extensive cross-examination, defense counsel showed and discussed with Mr. Kimble the following exhibits:

- GX 623 (DX 108), GX 624 (DX 110), and GX 626 (DX 109): the contracts between Metro DME Supply LLC and Mr. Kimble's call center business, Chronos and Pantheon, for marketing and business process outsourcing services, executed on April 4, 2016;

- DX 437: King & Spalding attorney Seth Lundy's firm bio webpage (*see* Trial Tr. Vol. 4, 150:21-25 (July 1, 2021));

- DX 183: template contracts for Chronos and Pantheon, sent by Mr. Lundy (*see id.* at 151:13–152:15); and

- DX 259, 260, 261, and 262: template contracts for another unrelated DME company, sent by K&L Gates attorney Joshua Skora (*see id.* at 153:22–156:15).

As for the government's exhibits, defense counsel painstakingly walked Mr. Kimble through the Metro DME contracts page by page, provision by provision, and challenged Mr. Kimble's version of events. Mr. Kimble was asked about nearly every substantive provision in the twenty-plus pages. For example, defense counsel asked Mr. Kimble if the contract stated they were not purchasing referrals, and Mr. Kimble answered, "That's what this says, yes, sir." (*See id.* at 189:11-14.)

Mr. Kimble also was asked extensive questions about the template contracts and his lawyers' role in drafting them—the defense exhibits listed above. They repeatedly questioned him about the role and identity of his counsel and his internal compliance department. Mr. Kimble admitted on the stand that the template contracts were vetted by attorneys before he shared them with the defendants.[4]

Further, the additional evidence the defendants seek to introduce now does not impeach Mr. Kimble. There is nothing to impeach because the evidence is consistent with Mr. Kimble's testimony—that the attorneys did indeed draft the template contracts.

---

[4] *See also, e.g.*, Trial Tr. Vol. 4, at 150:3-13 (July 1, 2021):
    Q. And who is your legal counsel?
    A. Seth Lundy, King & Spalding.
    Q. Okay. And that's a -- King & Spalding is an international law firm with offices in the United States?
    A. Yes, sir.
    Q. Okay. And they do healthcare regulatory law?
    A. Yes, sir, they do.
    Q. Okay. And they provided the template contracts that you shared with the Hagens?
    A. Yes, sir, they did.

**United States' Response to Defendants' Trial Brief—Page 9**

For example, Mr. Kimble testified consistently over the course of two days that the contracts were in place to make the business arrangement with the defendants *appear* compliant, not that the contracts themselves were in any way reflective of their actual business model.  The defendants have made no showing that the attorney testimony will in any way be inconsistent with Mr. Kimble's testimony.  Accordingly, there is no reason to recall Mr. Kimble to the witness stand.  And there is no reason to compel Mr. Kimble's attorneys to testify on these topics.

The defendants' goal here is clear.  Having already sought to impeach him and cross-examine Mr. Kimble, but dissatisfied with the testimony they elicited, the defendants now seek to *change* Mr. Kimble's testimony—in their own words taken from their trial brief, in an attempt "to reveal[] that Kimble *wanted his operations to be compliant*, which would have directly and specifically contradicted his statement that the contracts were a mere sham or disguise." (Dkt. 266 at 6 (emphasis added).)  Kimble repeatedly testified that the opposite was true—he wanted his operations to evade detection by *appearing* compliant, which is why he had the contracts vetted by legal counsel.  Kimble's consulting an attorney to draft a contract does not make what he did later and what he used those contracts for legal—and it does not change his intent that the contracts act as a disguise.  Accordingly, there is nothing left to impeach.

>  D. **If either defendant chooses to testify, they put in issue communications they had with their own counsel on these topics.**

In their trial brief, the defendants argue that the government "opened the door" to the issues related to Kimble's legal advice.  (Dkt. 266 at 7.)  The government did no such

thing.  The government did not delve into Mr. Kimble's legal advice, his conversations with his counsel, or other types of regulatory or legal advice he sought.  Instead, it merely clarified on redirect examination the role the contracts played in the defendants' and Mr. Kimble's conspiracy—a disguise for what the Hagens were actually buying.  The government has never disputed or questioned that the contracts were written by counsel and, if followed, would not be illegal.

To the contrary, the real risk here is that the defendants will open the door and put in issue their own legal advice.  If either defendant chooses to testify (*see* **Exhibit A**), then they necessarily implicate their own legal advice—the exact conundrum the Court sought to resolve pretrial by ordering *in camera* disclosures.  (Dkt. 233.)  Hypothetically, if either defendant testifies inconsistently with Mr. Kimble's testimony—for example, that Mr. Kimble did relay to Leah Hagen or Michael Hagen the fact that the template contracts were vetted by attorneys—that necessarily puts the communications the defendants had with their own counsel on that same subject in issue.  (*See* Dkt. 217 at 6.)  Either the defendants chose not to seek their own legal advice, including from their counsel who was handling their Medicare audits at the time, or they received legal advice on this very issue.  If the defendants' own counsel told the defendants that their operation was illegal, it would directly undercut any good faith defense.  Either way, it is relevant to their knowledge and intent.  Such facts would be central to the jury's determination of whether it was reasonable for the defendants to rely on Mr. Kimble's reassurances or any legal advice from Mr. Kimble's counsel.

For these reasons, if the defendants choose to testify and do so inconsistently with Mr. Kimble, they will put in issue their attorney-client privilege as to the narrow subset of pre-indictment communications with counsel regarding the legality of the alleged criminal operation underlying the case, except any advice received from current counsel. (*See* Dkt. 217 at 7.)  The Court ordered defendants disclose *in camera* any such communications, and should either defendant choose to testify, the Court should permit immediate disclosure of those materials to the government.  (Dkt. 233.)  Failing to do so would mislead the jury about why the government did not then inquire as to the legal advice sought by *the Hagens*—and area of inquiry the government cannot broach without Court approval.

### E. Any anticipated testimony regarding the lobbying efforts related to draft congressional legislation is also irrelevant.

The defendants should also be precluded from arguing or eliciting any testimony regarding the prospect of joining a coalition for lobbying efforts related to draft congressional legislation in the durable medical equipment industry (hereinafter referred to as the "orthotic coalition").  At the pretrial conference, the Court granted the government's motion *in limine* on a similar topic—HHS proposed rulemaking regarding the Anti-Kickback Statute's safe harbors—and agreed that evidence regarding the orthotic coalition was irrelevant and inadmissible.  (*See, e.g.*, Dkt. 254.)  The fact that the defendants were engaged in these lobbying efforts does not go to their knowledge or intent.  Indeed, if anything, it shows the defendants were not complying with the then-current telemedicine regulations and were willing to try to change the law to comport

with their criminal actions.  Any hope the Hagens may have had that they could change the law at some future date does not make any element of the offenses charged more or less likely.  Accordingly, any mention of the orthotic coalition and its proposals for revising legislation, which have not yet been adopted and may never in fact be adopted, is irrelevant, unduly prejudicial, would risk confusing and misleading the jury, and be a waste of time.  Further, the emails discussing that coalition are inadmissible hearsay.

## CONCLUSION

For the foregoing reasons, the relief the defendants request must be denied.  The evidence is inadmissible because it is irrelevant, hearsay, unduly prejudicial, cumulative, and presents a high risk of confusing and misleading the jury.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*/s/ Brynn A. Schiess*
Brynn A. Schiess, Trial Attorney
Fraud Section, Criminal Division
Department of Justice
1100 Commerce, Suite 300
Dallas, Texas 75242
Telephone: (202) 374-3484
Brynn.Schiess@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on July 5, 2021, I electronically filed the foregoing motion with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to counsel of record for all defendants.

*/s/ Brynn A. Schiess*
Brynn A. Schiess
Trial Attorney